FILED IN CHAMBERS
U.S.D.C. Atlanta

MAY 2 3 2006

LUTHER D. THOMAS, Clerk
By: _____
Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ELMA I. BROOKS,

        Plaintiff,

    v.

CARI M. DOMINQUEZ,
Chair of United States Equal
Employment Opportunity
Commission,

        Defendant.

CIVIL ACTION
NO. 1:04-CV-1396-RLV

## O R D E R

This is an action pursuant to Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, in which the plaintiff alleges that she was not selected for the position of Investigator in August 2001 by the defendant, United States Equal Employment Opportunity Commission ("EEOC"), because of her age. The plaintiff also alleges that she was subjected to discrimination on the basis of her age and in retaliation for having filed an EEO complaint (based on her non-selection) when she was given a Letter of Warning ("LOW") on October 31, 2001, and a Letter of Reprimand ("LOR") on January 8, 2002. Pending before the court is EEOC's motion for summary judgment [Doc. No. 33].

## I. Background and Procedural Background

The following facts are gleaned from the court's review of the record, the parties' submissions, and the briefs submitted by the

parties.   The plaintiff, Elma Brooks, who was born on April 29, 1937, began her employment with the EEOC in 1985.  In August 1998, she became an Investigative Support Assistant ("ISA") in the Atlanta District Office of the EEOC.  The Director of the Atlanta District Office of the EEOC was Bernice Williams Kimbrough. Kimbrough was also the individual who had promoted the plaintiff to the ISA position in August 1998.  At the time of her promotion to ISA, the plaintiff was 61 years old.  Prior to her promotion to the ISA position, the plaintiff had been an Office Automation Assistant and receptionist at the agency.

Between August 1998 and May 2001, the EEOC received several complaints from the public about the plaintiff's rudeness and her behavior.  During the plaintiff's initial three years as an ISA, she received several complaints from the potential charging parties ("PCPs") who called the EEOC to file discrimination claims. Between August 1998 and May 2001, PCPs complained that the plaintiff was rude to them, dismissive, and generally antagonistic. The plaintiff responded to the PCPs' complaints about her by criticizing, blaming, or attacking the complaining PCPs or her immediate supervisor, Mary Scott.

On September 24, 1999, a PCP named Charles Beasley claimed that the plaintiff was rude to him and cursed at him when he called her on the telephone.  According to Beasley, he had followed up with the plaintiff regarding forms that she would send to him.

2

Beasley complained that when he asked the plaintiff about the forms, she told him, "[Y]ou will get the damn things when you get them." Beasley complained to his Congressman about the plaintiff's conduct. In a letter dated October 8, 1999, the plaintiff's supervisor, Scott, reminded the plaintiff that the EEOC is "a service oriented agency and we cannot display rude behavior (voice tone) over the telephone and hang up on the public." Scott copied Kimbrough on her October 8, 1999, letter to the plaintiff.

On April 16, 2001, Bernard Starr, a Business Agent for the International Alliance of Theatrical Stage Employees, AFL-CIO, wrote to Kimbrough to complain that the plaintiff had been rude to him and to his secretary. Starr complained that the plaintiff had yelled at him. Furthermore, Starr claimed that when he told the plaintiff that she had no business yelling at him since he paid her salary, the plaintiff said "No, you don't! And I bet I make more money than you." Scott asked the plaintiff to respond to Starr's complaint. The plaintiff acknowledged, "I must have said something insane if he's [Starr] carrying on like that" and accused both Starr and his secretary as being "irrational." Also in response to Starr's complaint, the plaintiff stated that she hoped "never [to] talk to irrational callers like that again." Scott notified Kimbrough of Starr's complaint and the plaintiff's response.

On April 25, 2001, a PCP named Debra Cartee called the plaintiff to inquire about filing a charge. According to Cartee,

the plaintiff called her a "racist" when Cartee indicated that she did not want to come downtown to pick up the necessary forms because of crime. Scott asked the plaintiff to respond to Cartee's complaint. According to Scott, the plaintiff admitted that she had called Cartee a "racist." According to Scott, the plaintiff told her that Cartee's comment about not wanting to come downtown because of the crime was a "racist statement."[1]  On April 30, 2001, Scott notified Kimbrough of Cartee's complaint about the plaintiff and the plaintiff's response.  On May 7, 2001, Scott issued a formal Memorandum of Counseling to the plaintiff in which she reminded the plaintiff that "rude and discourteous behavior toward prospective charging parties and the public will not be tolerated."

In April 2001, an Investigator position became vacant in the Atlanta District office of the EEOC, where the plaintiff was an ISA.  In May 2001 when the plaintiff applied for the Investigator position, she was 64 years of age.  It is not disputed that the EEOC Investigator holds a sensitive position that requires tact and diplomacy and requires the Investigator to deal extensively with the public.  Furthermore, an Investigator must be able to deal directly with complaining parties and the employers about whom the parties complain.  Additionally, an Investigator must be able to

---

[1] During her EEOC hearing, the plaintiff denied calling Cartee a racist, but she did admit that she had told Scott that "a lot [of] these people don't want to come down here because they have racist attitudes about coming to downtown Atlanta."

deal with and resolve hostile or tense situations. Among the tasks of an Investigator, an Investigator conducts reconciliation meetings in which the parties are brought together and the Investigator tries to settle the dispute. An EEOC Investigator is also in a position where she has to draft decisions and apply the law to the facts.

On her application for the Investigator position, the plaintiff stated that she had been an ISA since August 1998. Prior to that, she had worked for the EEOC as an Office Automation Assistant and a receptionist for the agency. The plaintiff has a high school education and took some college courses without receiving a college degree. On her application, the plaintiff indicated that her duties as an ISA included assisting investigators in developing a variety of evidentiary materials surrounding charges. However, the plaintiff herself did not have extensive experience investigating claims.

Kimbrough was the selecting official for the Investigator position. Deputy District Director John Fitzgerald and Enforcement Manager William Rantin, Jr. were recommending officials for the Investigator position. Kimbrough, Fitzgerald, and Rantin interviewed the plaintiff as well as a number of other applicants for the Investigator position. Kimbrough, Fitzgerald, and Rantin all recommended Kathy Riley, Serena Curry, Althea Thompson, and Anthony Seals, (the "Selectees") for the Investigator position.

Kimbrough did not select the plaintiff for the Investigator position. According to Kimbrough's Declaration, she relied on her own evaluation of the applicants for the Investigator position as well as the recommendations of Fitzgerald and Rantin to choose the four Selectees for the Investigator position. Neither Fitzgerald[2] nor Rantin[3] recommended the plaintiff for the Investigator position. Kimbrough also believed that the plaintiff was not well-suited for the Investigator position in light of her history of customer complaints.[4]

While none of the four Selectees had worked previously for the

---

[2] Fitzgerald believed that the plaintiff viewed "things in black and white, and has trouble understanding the motivations of others." Additionally, Fitzgerald stated that he was concerned about the plaintiff's "people skills problem" and noted that the plaintiff "has a tendency to upset people with whom she is dealing." Furthermore, Fitzgerald believed that other applicants had better credentials and experience than the plaintiff possessed.

[3]Ratin believed that the Selectees had superior qualifications for the Investigator position. Additionally, Rantin explained that he was impressed with the other Selectees' educational background and the way that they had answered their interview questions. Ratin stated that he did not find the plaintiff to be one of the best qualified applicants for the position.

[4] In her Statement of Disputed Material Facts, the plaintiff states, "Mary Scott, Plaintiff's direct supervisor, was not involved in the decision to non-select Plaintiff for the Investigator position, nor was she asked to give a recommendation as to whether or not Ms. Brooks should have been promoted to the position." According to the plaintiff, Scott recommended the plaintiff to grades GS-5 to GS-6 and to her current GS-7 and that Kimbrough previously had promoted the plaintiff based upon Scott's recommendations; according to the plaintiff, it is Kimbrough's general practice to accept recommendations of subordinate managers when it comes to filling vacant positions.

EEOC, all four of the Selectees had college degrees.  Three of the four Selectees had advanced degrees, and the fourth had completed 30 hours of course work towards a graduate degree.  The plaintiff does not have a college degree.[5]

The plaintiff had been an ISA for three years when she applied for the Investigator position; all of her prior positions had been clerical in nature.  Furthermore, the plaintiff did not have experience examining claims in depth or applying the law to the facts.  The plaintiff's experience with EEO claims was limited to intake work, which included interviewing claimants to determine whether the EEOC has jurisdiction over their complaints, drafting simple charges, fielding telephone inquires, maintaining case files, mailing out forms and correspondence, typing documents into final form and providing back-up assistance for the receptionist.

On August 13, 2001, the plaintiff learned that she had not been selected for the Investigator position.  On August 24, 2001,

---

[5]Selectee 1 had an undergraduate degree from the University of North Carolina and eight years of experience in the Social Psychology field.  Selectee 2 received an undergraduate degree in Physiology and a Masters Degree in Public Administration.  Selectee 2 held the position of Claims Examiner prior to being chosen for the Investigator position.  Selectee 3 received an undergraduate degree in Criminal Justice and a Masters Degree in Public Administration from Savanna State University.  Selectee 3 has worked in the social service community as a Social Worker, Claims Examiner and Social Service Case Manager.  Selectee 4 has an undergraduate degree in Journalism/History from Kansas State University and a Juris Doctor from Thurgood Marshall School of Law.  Selectee 4 held previous positions at law offices, government agencies, and the U.S. Air Force.

the plaintiff contacted the EEO office alleging discrimination based on age. On November 27, 2001, she filed a formal complaint.

On or around October 11, 2001, Deborah Zayas wrote to Scott to complain about the plaintiff's being rude to her. Specifically, Zayas wrote to Scott complaining that the plaintiff did not return her phone calls and that the plaintiff was dismissive of her complaints of sexual harassment. Scott asked the plaintiff to respond to Zayas' complaints. In response, in a memo dated October 16, 2001, the plaintiff responded to Zayas' complaints and accused Zayas of lying, being a "real problem", and described Zayas as "weird." The plaintiff told Scott that Zayas was "unreal" because the plaintiff believed that Zayas' allegations did not constitute sexual harassment.

On October 5, 11, 18, 2001, Scott allegedly received telephone calls from three unidentified persons complaining about the discourteous treatment they had received. The plaintiff alleges that Scott had these people call in to file complaints about her. On October 31, 2001, Scott gave the plaintiff a LOW. In her deposition, the plaintiff testified that Scott issued the LOW because the plaintiff had refused to accept the blame for an EEO charge being in the 30-day file without being mailed out. The plaintiff contends that Scott got into trouble for leaving an incoming EEO charge in the 30-day file without sending it out,

8

which resulted in the complainant's losing his right to sue.  The plaintiff contends that Scott wanted the plaintiff to say that she, not Scott, had put the incoming charge in the file.[6]

On or around December 13, 2001, a PCP, Stephen Moxley, wrote to the EEOC complaining that the plaintiff had been rude to him, when he had asked the plaintiff if there was anybody in the office who could do a charge for him.  In response, the plaintiff allegedly told him that "this is not a social service agency" and that he "would have to come back to the office and take the

---

[6] On this point, the plaintiff testified:

Q: What do you mean, you refused to accept the blame for a charge in the 30-day file?
A: She wanted to say that I put the incoming charge in the file.  I don't get the incoming charges, the signed charges.  When I send the charge out, I'm through with the charge.
Q: Now, did she get in trouble for that?
A: Yes.  That's--she's not supposed to do that.  You see, when you let a file stay there-- now this was on November 1st.  This charge come in on October the 31st, you look how she have let the files stay there.  And then when-- I don't know when the person assigned the-- so this person probably lost his right to file.
Q: So that's why she got in trouble?
A: That's why she was angry with me and writing me these notes.  She don't do that no more.
Q: So that's why she wrote you the letter of warning, because she didn't want to be blamed for-
A: I wouldn't take the blame for her.  If I had took the blame, it wouldn't have looked bad on her.

In a letter from the plaintiff to Scott dated November 1, 2001, the plaintiff did not link the LOW to her EEO complaint. Instead, the plaintiff stated that the LOW was related to the plaintiff's failure to take responsibility for a charge that had been improperly filed.

responsibility of filing the charge." Scott asked the plaintiff to respond to Moxley's complaint. The plaintiff denies that the statements she made to Moxley were rude; however, she admitted that she had told him that the EEOC was not a social service agency.

On or around January 7, 2002, Claudette Thomas submitted a complaint to the EEOC in which she claimed that the plaintiff had been "very harsh and hard in her responses." Thomas claimed that when she had asked the plaintiff why she was having such an attitude with her, the plaintiff had raised her voice and said that she did not have an attitude. Scott asked the plaintiff to respond to Thomas' complaint. The plaintiff contends that the reason Scott asked her to respond to Thomas' complaint about her was because Scott was angry, although the plaintiff cannot recall what Scott was angry about.

On January 8, 2002, Scott gave the plaintiff the LOR. The LOR stated that Scott had received another customer complaint on December 13, 2001, alleging that the plaintiff was rude to the complainant and that the plaintiff had told the PCP that the EEOC was not a "social service agency." The January 8, 2002, LOR also noted that the plaintiff had received previous oral and written warnings regarding her behavior which had been deemed to be rude and discourteous.

It is undisputed that Scott, not Kimbrough, issued the LOW and the LOR to the plaintiff. During her deposition, the plaintiff

10

testified that Scott had issued the LOR for reasons other than age discrimination or retaliation.  The plaintiff testified that Scott was always mad about something and that Scott was an angry person. The plaintiff told Kimbrough that the LOR was an example of the unprofessional way that Scott dealt with her subordinates, that Scott does not like people, and that she should not be subjected to Scott's negative personality.[7]  However, the plaintiff did not link the filing of her EEO complaint for her denial of the promotion to the Investigator position to the issuance of the LOR.

---

[7]On this point, the plaintiff testified:

Q: (By Ms. Ben-David) I'm handing you what's been marked as Exhibit 32.
A: Okay.  January the 8th letter of reprimand.  This is what she was mad about.  This is when she wrote me up for Stephen Moxley.
Q: Okay.  So she didn't write this letter of reprimand based on Ms. Thomas.
A: This is what I got.  I got it on January the 8th after I came back from Christmas.  She was still mad.
Q: What was she mad about?
A: I guess-I don't know what; but anyway, I got this write-up, this reprimand.
Q: And you can't remember right now what she was mad at you about?
A: Well, my complaint about not having work, and I had referred a charging party to Ms. Kimbrough.  I'm not sure just what it was, but there's always something that Ms. Scott is mad about, was at that time.

In a letter from the plaintiff to Kimbrough dated January 8, 2001, the plaintiff did not link the LOR to her filing of an EEO complaint.  Instead, the plaintiff argued that the LOR was "a good example of the unprofessional way Ms. Scott deal [sic] with the people who work under her" because Scott "do not like people" and Scott's "negative personality."  Nowhere in this letter does the plaintiff link Scott's issuance of the LOR to her filing an EEO complaint.

On January 8, 2002, the plaintiff contacted the EEO office and filed another EEO complaint alleging discrimination on the basis of reprisal when she received the LOW and the LOR from Scott.   A formal complaint was filed on February 16, 2002.   On January 14, 2002, the plaintiff received a letter from the EEOC that defined the scope of her first discrimination claim as claiming age discrimination because she was not promoted to the Investigator position.   On March 11, 2002, the plaintiff received another letter from the EEOC that defined the scope of her second discrimination claim as alleging age discrimination and retaliation when she received the LOW on October 8, 2001, and the LOR on January 8, 2002.   The plaintiff never objected to the definitions of her discrimination claims that were set forth in the January 14, 2002, and March 11, 2002, letters.

On May 11, 2004, the plaintiff filed this action against EEOC, alleging that she had been subjected to discrimination on the basis of her age when she was not selected for the position of Investigator in August 2001.   Additionally, the plaintiff alleges that she was subjected to discrimination on the basis of her age and in retaliation for filing an EEO complaint (based on her non-selection) when she was given a LOW on October 31, 2001, and a LOR on January 8, 2002.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment

is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of his or her on which he or she bears the ultimate burden of proof. Id. at 322-23.  Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324.  Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322.

### III. Legal Analysis
### A. Were the LOW and the LOR Issued
### By the Alleged Discriminating Official

In her complaint, the plaintiff alleges that she was "discriminated against by Bernice Williams Kimbrough (50s), District Director, by hiring younger people off the street that had

13

to be trained for the Investigator position."   In her Amended
Charge filed on June 1, 2005, which was construed as an Amended
Complaint, the plaintiff alleged, "I was discriminated against by
Bernice Williams Kimbrough, Director." However in her Statement of
Disputed Material Facts, the plaintiff now states that she "holds
accountable for her age discrimination and retaliation, Ms. Bernice
Kimbrough, Ms. Mary Scott, and the other Management team members
participating in her non-selection and the LOW and LOR."

In its motion for summary judgment, the EEOC argues that Scott
issued the LOW and the LOR.   The EEOC further argues that it was
undisputed that Kimbrough was not involved in Scott's decision to
issue the LOW and the LOR.   Therefore, the EEOC argues that to the
extent that the plaintiff's discrimination claims are based on the
issuance of the LOW and the LOR such claims should be dismissed.
In response, the plaintiff's attorney states that the plaintiff
made these filings while she was *pro se* and that the plaintiff
named only Kimbrough because "she was the Director and her 2nd line
supervisor."   However, the court finds little merit in this
argument.   Therefore, to the extent that the plaintiff's
retaliations claims are based on the LOW and the LOR issued by
Scott such claims of retaliation are dismissed.

### B. Retaliation Claims

Even if the court were to examine the merits of the
plaintiff's retaliation claims, the court would arrive at the same

14

conclusion.  The same analytical frame work applies to retaliation claims as applies to other employment discrimination claims. Wright v. Southland Corp., 187 F.3d 1287, 1305 (11th Cir. 1999). To establish a *prima facie* case of retaliation, the plaintiff must show: (1) that he engaged in a statutorily protected expression; (2) he suffered an adverse employment action;[8] and (3) there was a casual link between the adverse action and his protected expression.  Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1260 (11th Cir. 2001).  Once a plaintiff has established a *prima facie* case, the employer then has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action. Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998). The ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct remains on the plaintiff. Id. at

---

[8] A plaintiff asserting a claim under the federal anti-discrimination laws must show that she suffered an adverse employment action. Davis v. Town of Lake Park, Florida, 245 F.3d 1232, 1246 (11th Cir. 2001).  However, the federal discrimination laws were not intended to protect employees from every possible employment action that could be taken in the work place. Id. at 1238 (noting that "not all conduct by an employer negatively affecting an employee constitutes adverse employment action.") Instead, the federal discrimination laws were intended only to apply to those actions that were significant enough to affect an individual's terms and conditions of employment. Id. at 1239. Employment actions that are significant enough to affect the terms and conditions of employment fall within two categories: (1) ultimate employment actions and (2) other employment actions that meet "some threshold level of substantiality." See Stavropoulos v. Firestone, 361 F.3d 610, 616-17 (11th Cir. 2004).

15

1460.

The plaintiff contends that the LOW of October 31, 2001, and the LOR on January 8, 2002, were taken against her in retaliation for having filed the EEO complaint concerning her non-selection for the Investigator position.  Therefore, the court must determine whether the plaintiff has met the second element of a prima facie case of retaliation, i.e., whether she has established that she suffered an adverse employment action.

The EEOC argues that neither the LOW nor the LOR constituted adverse employment actions.  Specifically, the EEOC argues that although the LOW and the LOR might have constituted an employment action, neither rose to the level of an adverse employment action as defined by the Eleventh Circuit.  In response, the plaintiff argues, "The conduct by management in issuing the Letter of Warning and Letter of Reprimand negatively affected Ms. Brooks [sic] promotion opportunity to Investigator, therefore, constituting an adverse employment action."

Although the parties argued at great lengths about whether the issuance of the LOW and the LOW were adverse employment actions, the court need not decide the issue.  For the sake of judicial economy, the court assumes, without deciding, that the plaintiff made out a *prima facie* case of retaliation.  However, even with that assumption, the plaintiff's retaliation claim still fails because she has failed to rebut the legitimate, non-discriminatory

16

reasons, i.e., the existence of multiple PCP complaints, for its actions proffered by EEOC for its actions.   The plaintiff has failed to meet her burden of demonstrating that the proffered reasons are a pretext for unlawful discrimination or retaliation.

It is undisputed that Scott, not Kimbrough, issued the LOW. The evidence in the record suggests that Scott issued the plaintiff a LOW after she received multiple complaints by PCPs about the plaintiff's allegedly offensive conduct towards them.   The evidence also indicates that prior to the issuance of the LOW that on May 7, 2001, Scott had issued a formal Memorandum of Counseling.   In that Memorandum of Counseling, Scott attempted to remind the plaintiff that "rude and discourteous behavior toward prospective charging parties and the public will not be tolerated."   The plaintiff responded to Scott's attempts to counsel her by claiming that Scott "has such mood and discourteous ways of acting, she could counsel anybody" or claiming that the PCPs' complaints were without merit.

According to the LOW, Scott had received telephone calls from individuals on October 5, October 11, October 18, 2001, complaining about the plaintiff's discourteous manner.   The plaintiff alleges that Scott had these individuals call the EEOC to complaint against her.   However, there is no evidence in the record supporting the plaintiff's allegation.   The evidence in the record suggests that the series of complaints in October 2001 which included the Zayas complaint contributed in Scott's issuance of the LOW.

17

With regard to the issuance of the LOR on January 7, 2002, Scott testified that she decided to give the plaintiff the LOR when she had received another complaint letter from a PCP about the plaintiff's conduct even after the issuance of the LOW on October 31, 2001.   Scott stated that the issuance of the LOR was a continuation of a progressive discipline for the plaintiff's problem that had persisted even after being warned.   Thus, the EEOC has proffered legitimate, non-discriminatory reasons, i.e., the complaints from PCPs regarding the plaintiff's behavior, for the issuance of the disciplinary letters.

Since EEOC has proffered legitimate, non-discriminatory reasons for the issuance of the LOW and the LOR, the plaintiff must present concrete evidence in the form of specific facts to demonstrate that the EEOC's proffered reasons are not the true reason for the issuance of the LOW and the LOR, but rather is a pretext for discrimination.   <u>See Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 256 (1981).

. The plaintiff's argument on the issue of pretext is that all ISAs receive complaints from PCPs from time to time.   The plaintiff argues that her situation was no different from other ISA employees in the office and that she was being singled out because she had filed a EEO complaint after she had been denied the Investigator position.   However, the evidence in the record indicates that the plaintiff had been warned about her allegedly offensive interaction

with PCPs as early as October 1999, more than a year and a half before she engaged in any protected activity. Also, the plaintiff had been counseled on several occasions about her attitude in dealing with PCPs. The plaintiff received this counseling prior to the time she first contacted the EEO. In fact, the plaintiff on May 7, 2001, was issued a formal Memorandum of Counseling reminding her that "rude and discourteous behavior toward prospective charging parties and the public will not be tolerated."

Furthermore, the plaintiff does not dispute that there were several PCPs who filed complaints against her because of her allegedly discourteous manner. Moreover, the plaintiff does not dispute the fact that she engaged in the behavior in question which resulted in the issuance of the LOW and the LOR.[9]

In this case, the weight of the evidence in the record demonstrates that the plaintiff has failed to successfully rebut the EEOC's proffered legitimate, non-discriminatory reason, i.e., the plaintiff's discourteous behavior which resulted in PCP complaints, for the issuance of the LOW and the LOR. While the LOW

---

[9] In fact, the plaintiff testified that Scott gave her the LOW and the LOR because of reasons unrelated to either her age or in retaliation for filing the EEO complaint. The plaintiff alleges that Scott issued the LOW because Scott was angry at the plaintiff for not taking the blame for the improper filing of a charge. With regard to Scott's issuance of the LOR, the plaintiff testified that Scott was always mad about something and that Scott was an angry person. The plaintiff told Kimbrough that the LOR was an example of the unprofessional way that Scott dealt with her subordinates, that Scott does not like people, and that she should not be subjected to Scott's negative personality.

and the LOR occurred after the plaintiff had sought the assistance of the EEO for the EEOC's non-selection of her for the Investigator position, the plaintiff has not established that Scott had no legitimate, non-discriminatory basis for disciplining her when she issued the LOW and the LOR.  Therefore, the plaintiff has failed to establish pretext on her claim for retaliation.[10]

### C. ADEA Claim

Under the ADEA, a plaintiff may prove a claim of discrimination through (1) direct evidence, (2) circumstantial evidence, or (3) statistical proof. Early v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990).  The plaintiff has not offered any direct or statistical evidence proof.  Therefore this court limits its inquiry into circumstantial evidence.  To evaluate circumstantial evidence in age discrimination case, the court uses a modified form of the test formulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Under the modified form, an employee establishes a *prima facie* case of age discrimination by demonstrating that she (1) was a member of the protected age group, (2) was subjected to adverse employment action, (3) was qualified

---

[10] The plaintiff places great significance on the fact that all of the PCP complaints mentioned in this case which led to the LOW and LOR being issued by Scott were initially received by Kimbrough. On this point, the plaintiff's argument misses the mark.  The plaintiff does not dispute that several PCPs filed complaints against her and that there was at least some merit to the PCPs' complaints.  The PCPs' complaints, even if Kimbrough initially received them in the mail, provided Scott with legitimate, non-discriminatory reasons for issuing the LOW and the LOR.

to do the job, and (4) was replaced by or otherwise lost a position to a younger individual. <u>Chapman v. AI Transp.</u>, 229 F.3d 1012, 1024 (11th Cir. 2000).

A plaintiff who establishes a *prima facie* case raises a rebuttable presumption that the employer illegally discriminated against her.   The employer then has the burden of articulating legitimate, non-discriminatory reasons for the adverse employment action. <u>McDonnell Douglas</u>, 411 U.S. at 802-03.   If the employer fails to produce such evidence, the plaintiff is entitled to judgment. <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 509 (1993).   On the other hand, if the employer articulates a legitimate reason for its action, the presumption of discrimination disappears. <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1528 (11th Cir. 1997).   The plaintiff must produce sufficient evidence to permit the trier of fact to conclude that the employer's stated reason was not the real reason for the employment decision. <u>St. Mary's</u>, 509 U.S. at 511.   If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it. <u>Wilson v. B/E Aerospace, Inc.</u>, 376 F.3d 1079, 1088 (11th Cir. 2004).   Quarreling with that reason is not sufficient. <u>Id</u>.   Furthermore, a plaintiff cannot prove pretext simply by showing that she was better qualified than the individual who received the desired position.

<u>Denney v. City of Albany</u>, 247 F.3d 1172, 1187 (11th Cir. 2001).[11]

In this case, the EEOC does not dispute that the plaintiff has established a *prima facie* case of age discrimination. Therefore, the burden shifts to the EEOC to proffer a legitimate, non-discriminatory reason why the plaintiff was not chosen for the Investigator position.

It is undisputed that Kimbrough was the selecting official for the Investigator position. Kimbrough stated that she relied on her own evaluation of the applicants as well as the recommendation of Fitzgerald and Rantin to make her selection. Neither Fitzgerald nor Rantin[12] recommended the plaintiff for the position. Kimbrough

---

[11] Despite the shifting of the burden of production between the plaintiff and the defendant under <u>McDonnell Douglas</u> framework, the ultimate burden of persuasion remains at all times with the plaintiff. <u>Wilson</u>, 376 F.3d at 1088. A plaintiff may prevail on an employment discrimination claim either by proving that intentional discrimination motivated the employer or producing sufficient evidence to allow a rational trier of fact to disbelieve, the legitimate reason proffered by the employer, which permits, but does not compel, the trier of fact to find illegal discrimination. <u>Id</u>.

[12] In her complaint, the plaintiff alleges that she was discriminated against by Kimbrough. However, the plaintiff now alleges that she was discriminated against by EEOC management which includes Fitzgerald and Rantin.

In his Declaration, Fitzgerald stated that he did not select the plaintiff for the following reasons:

5. I did not recommend Elma Brooks for the Investigator position because we had applicants with better credentials and experience. An Investigator has to draft decisions and apply the law to the facts. As a result, an Investigator should have good writing skills and analytical abilities. In addition, an Investigator has

agreed that the plaintiff was not well-suited for the position. Additionally, Kimbrough stated that she was aware that the plaintiff had difficulty in dealing with and working with PCPs. For the these reasons, Kimbrough stated that she did not select the plaintiff for the position.[13] Based on this evidence, the EEOC has offered several legitimate, non-discriminatory reasons for its decision not to select the plaintiff for the Investigator position.

---

to be able to deal well with people in highly emotional and stressful situations. I have supervised Ms. Brooks directly from time to time. It requires a great deal of energy and time to supervise Ms. Brooks. In general, she understands how to take a charge. I have observed that Ms. Brooks has serious "people skills" problems that would have prevented her from being an effective Investigator.

Similarly, Rantin explained that he was impressed with the other Selectees' educational background and the way that they answered their interview questions. Based on this, Rantin did not find the plaintiff to be one of the best qualified applicants for the Investigator position.

[13] In a witness statement, Kimbrough stated:

The reason I did not select Ms. Brooks was because of her conduct with the public that we serve. Ms. Brooks was written up on several occasions, prior to the vacancy for this position. It seems as if since Ms. Brooks received the ISA position she started receiving write ups. The ISA position requires Ms. Brooks to deal with the public. We have received complaints about her behavior with the charging parties. Other than that, Ms. Brooks is a capable employee. When I give her an assignment she completes it. Once Ms. Brooks became an ISA, I did compliment her on her work. I continually compliment her on her work. She is a good employee. However, I felt that if I promoted Complainant with all those disparaging letters in her files I would have been doing a disservice to Ms. Brooks, the public, and the Agency.

Once a defendant responds to the plaintiff's *prima facie* case by presenting a legitimate, non-discriminatory reason for its failure to promote the plaintiff, the burden shifts back to the plaintiff to show that the defendant's reason for not promoting her is a pretext.   To survive a motion for summary judgment, the plaintiff must show, in addition to her *prima facie* case, "sufficient" evidence impeaching or contradicting the defendant's asserted reason for not promoting her.   Ultimately, the plaintiff must be able to prove at trial that improper age discrimination played a "determinative" role in the defendant's decision not to promote her. <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 141-42 (2000).

On the issue of pretext, the plaintiff argues:

> All four selectees were more than ten years younger than Plaintiff with no ISA experience.  It is questionable as to why Ms. Brooks was not considered for one of the four positions.   The reason given by Ms. Kimbrough as to Plaintiff's non-selection is suspect, and only a pretext to legally discriminate against Plaintiff due to her age. A reasonable juror could infer discriminatory intent for the failure to select Ms. Brooks to one of the four positions of Investigator vacant, and that the reasons given by Ms. Kimbrough for the non-selection were a pretext for age discrimination.

The thrust of the plaintiff's argument with regard to pretext is that she should have been selected for the Investigator position because she was working as an ISA, while the four Selectee did not

24

work for the EEOC.[14]

As a preliminary matter, the court is cognizant that it does not "sit as a super-personnel department" that re-examines the EEOC's employment decisions. See Elrod v. Sears, Roebuck, and Co., 939 F.2d 1466, 1470 (11th Cir. 1991). Rather, the court's inquiry is limited to whether the disparities in the qualifications of the plaintiff and the actual four Selectees were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the four Selectees instead of the plaintiff.[15] Cooper v. Southern Co., 390 F.3d 695, 732 (11th Cir. 2004).[16] The court cannot reach this conclusion given the evidence

_____

[14] In her statement of Disputed Material Facts, the plaintiff argues, "Other ISA's with complaints did get promoted, but Ms. Brooks did not." However, the issue is not whether other ISAs with complaints got promoted to the position of Investigator with complaints, but whether the EEOC discriminated against the plaintiff because of her age.

[15] The plaintiff argues that her co-workers "testified that she was absolutely qualified for the investigator position." However, the court's query is not whether the plaintiff's co-workers believed the plaintiff to be qualified for the Investigator position. Instead, what is relevant is whether the qualifications of the other Selectees were so inferior to the plaintiff's that the decision-maker or makers' decision to chose the other Selectees could be based only on a discriminatory reason such as age discrimination.

[16] See also Cofield v. Goldkist, Inc., 267 F.3d 1264, 1267-68 (11th Cir. 2001) ("The relevant inquiry for us, then, is not to judge which employee was more qualified, but to determine whether any disparity between Bowen's and Cofield's managerial qualifications is so great that a reasonable fact-finder could infer that Goldkist did not believe Bowen to be better qualified."); Denney, 247 F.3d at 1188 (11th Cir. 2001) ("We do not ask whether the employer selected the 'most' qualified candidate, but only whether it

25

in the record.

On her application for the Investigator position, the plaintiff stated that she had been an ISA since August 1998. Prior to that, she had worked for the EEOC as an Office Automation Assistant and a receptionist for the agency. The plaintiff has a high school education and took some college courses without receiving a degree. On her application, the plaintiff indicated that her duties as an ISA included "assisting investigators in developing a variety of evidentiary materials surrounding charges."

The plaintiff argues that either experience as an ISA or work within the EEOC is a prerequisite to obtaining the position of Investigator at the EEOC. While the work of an ISA is a "bridge position" to the Investigator position, working within the EEOC as an ISA is not a prerequisite to obtaining the Investigator position according to the EEOC's job listing. Therefore, the court gave the plaintiff's argument on this point little weight.

In evaluating the plaintiff's work experience, the court notes that the plaintiff's experience with EEO claims while an ISA was limited to intake work, which included interviewing claimants to determine whether the EEOC has jurisdiction over their complaints, drafting simple charges, fielding telephone inquires, maintaining case files, mailing out forms and correspondence, typing documents into final form and providing back-up assistance for the

---

selected the candidate based on an unlawful motive.")

receptionist.   While the four Selectees did not have work experience within the EEOC or as an ISA, each of the four Selectees had a college education and experience performing investigative-like work experience at their previous government employers.[17]   The plaintiff lacked both a college education and an extensive work experience directly investigating claims.[18]   Kimbrough stated that the four Selectees' educational backgrounds and work experience were significant factors in deciding to select other Selectees. Given the qualifications of the other four Selectees, the plaintiff cannot show that she was "so clearly more qualified for the" Investigator position than the other four Selectees such that "a

---

[17]Two of the Selectees, Riley and Seals, had experience in the EEO departments of their respective federal agencies: Riley had served as an EEO counselor at the Veterans Administration for four years and had provided training to new EEO counselors, while Seals worked as an Equal Opportunity Advisor for the U.S. Air Force for three years where he analyzed and investigated complaints of discrimination.  The other two Selectees, Curry and Thompson, had experience analyzing claims as claims examiners for their respective agencies.  Curry had worked as a claims examiner for the Georgia Department of Labor and Thompson had been a claims examiner for the Veterans Administration.

[18] To the extent that Kimbrough made her choice based on her subjective belief about the Selectees' qualifications, rather than a test or other objective criteria, Kimbrough was entitled to do so, so long as that subjective belief did not reflect an impermissible motive.  The plaintiff has failed to demonstrate that Kimbrough's subjective belief was motivated by an impermissible motive such as age discrimination.  In reaching this conclusion, the court placed a degree of emphasis on the fact that Kimbrough, who was the relevant decision-maker in non-selecting the plaintiff for the position of Investigator, was the same individual who had promoted the plaintiff in 1998 to the position of ISA.  At the time of the plaintiff's promotion to ISA, the plaintiff was also within the protected class.

reasonable juror could infer discriminatory intent from the comparison."

On the issue of the PCPs complaints, the plaintiff argues, "Ms. Kimbrough, as Director, orchestrated the entire complaint issue to prevent Ms. Brooks from being selected as an Investigator, even though she was more qualified with greater experience than any of the selectees since she had been an ISA for some three years." However, this argument is entitled to absolutely no weight because the plaintiff has failed to submit any evidence whatsoever to support such an allegation.

During her three years as a ISA, the plaintiff received numerous complaints about her attitude or behavior from PCPs who called in to file discrimination claims. These PCP complaints against the plaintiff's behavior occurred both prior to and after the plaintiff filed her application for the Investigator position. As early as October 8, 1999, Scott warned the plaintiff about her behavior when dealing with PCPs. In a letter from Scott to the plaintiff dated October 8, 1999, Scott stated to the plaintiff that the EEOC is a "service oriented agency and we cannot display rude behavior (voice tone) over the telephone and hang up on the public." The letter concluded that the plaintiff's behavior "must stop immediately!" The record also contains evidence of a number of PCP complaints filed against the plaintiff. The complaints in the record against the plaintiff include the complaints of Beasley,

Starr, Cartee, three unidentified persons who called to complain on October 5, 11, 18 of 2001, Moxley, Zayas, and Thomas.   All of these PCP complaints were described above.

It is also undisputed that Kimbrough was aware that several PCPs had made oral and written complaints about the plaintiff's conduct at the time she made her selection decision.  The plaintiff did not offer any specific evidence to rebut Kimbrough's assertion that she reasonably should have considered such PCPs complaints in evaluating the plaintiff for the Investigator position.  Nor did the plaintiff dispute that working with attorneys, complaining parties, and management officials was a substantial portion of the Investigator position.  Nor does the plaintiff dispute that the Investigator position required "people skills." While it is beyond the scope of this order to evaluate the merits or credibility of the PCP complaints against the plaintiff or the plaintiff's own credibility in evaluating a motion for summary judgment, the existence of several PCP complaints against the plaintiff could have provided Kimbrough with a legitimate, non-discriminatory reason for not selecting the plaintiff for the position of Investigator.

Again, federal courts do not sit as a super-personnel department that reexamines an entity's business decision.  Instead, the inquiry of a federal court is limited to determining whether the employer gave a legitimate, non-discriminatory explanation for

29

its behavior. Elrod, 939 F.2d at 1470. See also Mitchell v. USBI Co., 186 F.3d 1352, 1354 (11th Cir. 1999). In this case, the court is satisfied that the EEOC gave legitimate, non-discriminatory reasons for its non-selection of the plaintiff. Consequently, the plaintiff was unable to show that the reasons proffered by Kimbrough for the plaintiff's non-selection to the position of an Investigator were a pretext for age discrimination.

### IV. Conclusion

For the foregoing reasons, the court GRANTS EEOC's motion for summary judgment [Doc. No. 33].

SO ORDERED, this 23rd day of May, 2006.

ROBERT L. VINING, JR.
Senior United States District Judge